BALTIMORE & O. R. CO. v. CARNEGIE STEEL CO.

(District Court, W. D. Pennsylvania. January 31, 1918.)

No. 1825.

1. COMMERCE ⬤�án89—FREIGHT—RATES—PROVINCE OF COURTS.
   Rates of a railroad company, which conform to its published tariffs, cannot be contested in the courts as unreasonable.

2. CARRIERS ⬤➦188—CHARGES—RIGHT OF CARRIER—WASTE MATERIAL FROM MANUFACTURING PLANTS.
   It is not a defense, to a suit by a railroad company to recover its established rates for transportation of slag, ashes, and other refuse delivered on private sidings "for¹ wasting for the plant," that some of such material may have been used by the company for ballast.

3. WORDS AND PHRASES—"WASTE."
   To "waste" means "to throw away."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waste.]

4. WORDS AND PHRASES—"SLAG."
   "Slag" is a refuse from metallic ores after being smelted.

5. WORDS AND PHRASES—"REFUSE."
   "Refuse" is that which is refused or rejected as useless or worthless.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Refuse.]

At Law. Action by the Baltimore & Ohio Railroad Company against the Carnegie Steel Company. On questions of law raised by affidavit of defense. Decision for plaintiff.

Geo. B. Gordon, of Pittsburgh, Pa., for plaintiff.
Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for defendant.

ORR, District Judge. To the verified statement of claim in 'this case, the defendant has filed an affidavit of defense for the purpose of raising a question of law. This is in conformity with the provisions of section 20 of the Pennsylvania Practice Act of 1915. P. L. 483–486. Under that section, if the question of law be decided against the defendant, the latter may file a supplemental affidavit of defense to the averments of fact within 15 days.

The action is brought by the railroad company to recover from the defendant compensation at its specific tariff rates for the transportation of slag, ashes, and refuse materials delivered by the defendant to the railroad and by the latter transported at the special instance and request of the defendant. Attached to and made part of the statement are the copies of the tariffs in force at the time of the various acts of transportation, the same having been duly filed and posted in accordance with the laws of the United States relating to interstate commerce, and of the commonwealth of Pennsylvania and the state of Ohio relating to intrastate commerce. There are also attached to and made part of the statement various schedules, showing the several interstate shipments and intrastate shipments, respectively, giving the points at which the shipments were received, the dates and numbers of the waybills, the

⬤➦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

initials and numbers of the cars, the contents, the destination, the weight, the rate, and the amount of charge for each car. The contents of each car included in the schedules are the subject of the tariffs to which special attention should now be given. Variations in the several tariffs need not be considered. Each of the published tariffs describes itself as:

"Rules, regulations and charges applying interstate (or as the case may be) for the wasting of slag, ashes and other refuse materials in carloads (as defined herein), when delivered to issuing carriers named herein at stations," etc.

Immediately preceding the list of stations in each tariff, there is found this language:

"The rules, regulations, and charges for waste refuse material as provided in this tariff will apply when the material to be wasted is delivered to the carrier at any of the stations named," etc.

After the list of stations, rules, regulations, and charges are set forth as parts of each tariff. They are five in number. The first two differ only in the character of the materials to be wasted and the charge per net ton. The first fixes the charge of 20 cents per net ton for "slag, flue dust, clean ashes, or refuse molding sand loaded into cars on private sidings of industries connected therewith, or on any team tracks, for wasting for the plant at some convenient point on their lines." The second fixes the charge of 35 cents per net ton for "ashes (mixed with other refuse), brickbats, dirt, and other refuse material." The third relates to the weight per car, etc. The fourth provides for an extra charge, if any material cannot be unloaded by one man, without the aid of a derrick or other similar mechanical appliance. The fifth contains the statement that the charges specified here are intended to be net to the carrier, without allowance for any terminal service. It will be noticed by a consideration of the entire tariff, but especially in rules 1 and 2, as first above mentioned, that the carriers are to accept the material "for waste for the plant at some convenient point on their lines." The total amount claimed by the plaintiff is based upon a great many different shipments extending over a period of several months.

The affidavit of defense sets up that the statement of claim does not set forth or disclose the cause of action for the following reasons:

(a) "There is no allegation or suggestion in the statement of claim that the material alleged by plaintiff to have been transported by it for defendant was wasted by plaintiff."

(b) "There is no allegation in the statement of claim as to where or when the said material was delivered by plaintiff, or as to what disposition was made of said material when so delivered by plaintiff."

[1] The arguments in this case upon the rule for judgment reveal the fact that the defendant relies upon this defense, to wit: If the railroad company used part of the materials it cannot recover for the transportation of that part, and, because the plaintiff does not say whether or not it used any of said materials, the statement of claim is insufficient. This defense and the objection to the plaintiff's statement are not sound. We must eliminate, at the start, any consideration of the question whether the rates charged are reasonable for the services performed. The question of rates is not for the courts. Texas &

Pacific Railroad Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, and Loomis v. Lehigh Valley Railroad Co., 240 U. S. 43, 36 Sup. Ct. 228, 60 L. Ed. 517, are two of very many cases sustaining this point.

[2] If a transportation service be performed by the carrier, the rate applicable to such service as specified in tariffs relating thereto, which are duly filed and published, must be paid by the person for whom such service was rendered. In the present state of the records it clearly appears that the service for which the charges were made should be paid by the shipper, unless the defendant's contention that the railway company could not charge anything for such of the materials as it might have used itself, be correct. The purpose of the transportation was "for wasting for the plant," and not wasting for the railroad, or for any other individual, or for any other entity.

[3-5] When considering the materials which were transported, and for the transportation of which the charges are made, we believe that the best definition of the verb "to waste," as used in this case, is "to throw away." See Stormonth's Dictionary. We know that "slag" is a refuse from metallic ores after being smelted. We note that slag and ashes are classed with "other refuse material" in the various tariffs. "Refuse" has been defined to be "that which is refused or rejected as useless or worthless." We note that brickbats and dirt are classed with "other refuse material" in the tariffs.

It is an irresistible conclusion that the object of the defendant in shipping these various kinds of refuse materials was to be rid of them. The service for which the plaintiff was entitled to recover the rates charged was the transportation of the materials away from the several plants of the defendant, so that they would be rid of them. What use the plaintiff would make of the materials after it had rid the plants of the defendant of them is, under the tariff, wholly immaterial. That there might be a difference in the use of the materials transported is suggested by the fact that there is one rate for clean ashes and another rate for ashes mixed with other refuse—a difference of 15 cents per net ton to the shipper in favor of clean ashes. If a householder agrees to pay a man for the removal of garbage, rubbish, or other things that he desires to be rid of, such householder ought not to be permitted to set off as against the other any amount that the latter might make by the disposition or even use of such refuse. Even if there should be a disposition on the part of the court to hold that the plaintiff is not entitled to the full rate per car for refuse used by it for ballast or fill along its line, the court could not do so, because it would then be assuming a control over the rates which, as we have seen from the cases above cited, is not within our jurisdiction.

Briefly, we find that reason (a) urged by the defendant has no foundation, because there is in the statement of claim positive averments of transportation to destinations of the various cars of material embraced in the tariffs, and that the destination of each car was at such a point that the material transported therein was wasted for the plant from which it was shipped, and that by the very transportation it was so wasted by the plaintiff. Reason (b) is without substance, because the

material transported was wasted for the plant from which it was shipped.

Therefore this court decides the question of law against the defendant, which may file a supplemental affidavit of defense to the averments of fact within 15 days.

## Supplement to Foregoing Opinion.

Inasmuch as there are a number of cases pending in this court involving the same question determined in this case, it is well perhaps to broaden the opinion, so as to include all of such cases. In some of the cases all the destinations of the several cars enumerated in the schedules attached to the statements are set forth. In some of them, however, some of the destinations of the cars which appear in the schedules are omitted. It is immaterial to the decision of the cases whether or not the destinations of the cars are expressed in the schedules. In accordance with the construction of the tariffs set forth in the foregoing opinion, the defendants in the various cases have no interest in knowing what the carriers may have done with the material after it was removed from their several plants at their instance.