EUGENE A. BIANCHI, Formerly Doing Business under the Name of FEDERAL TRANSPORTATION LINES, Plaintiff, *v.* SEARS ROEBUCK AND Co., Defendant.

Supreme Court, Special Term, Monroe County, November 3, 1952.

*Samuel Levy* and *David N. Levy* for plaintiff.

*William C. Combs* for defendant.

J. C. O'Brien, J.  For a period beginning January 17, 1947, and ending July 12, 1949, plaintiff picked up items of merchandise from defendant's warehouse and delivered them to branch stores of defendant located in other cities in New York State. For the pickup and delivery of each of these items plaintiff billed and was paid by the consignee at the times delivery was made.  Plaintiff now claims, however, that he is entitled to an additional payment for certain of these items, in fact most of them.  The additional payment claimed is eleven cents per cwt., with a minimum of thirty cents on each item.

The foundation of plaintiff's claim is that he was obliged to pick up these goods from the " interior " of defendant's warehouse building in Rochester, and that by reason of the language of the tariff, this additional payment is due him.

The defendant maintains a large warehouse building on Exchange Street, in the city of Rochester, where its " pool stock " is kept.  It is from this " pool stock " that the items of merchandise are selected and grouped, to be picked up by various common carriers and delivered to defendant's branch stores in other cities of the State.  During the two and one-half year period ending July, 1949, the plaintiff furnished five to eight trucks or transports each week to pick up and carry such merchandise.  Each truck or transport carried from five to seven tons of defendant's freight.  Accordingly, a substantial amount is involved in the controversy.

Besides the plaintiff there were four or five other common carriers who, under employment by the defendant, transported similar items of freight to New York State cities other than those served by plaintiff.

As will later appear, the dispute between plaintiff and defendant arises by reason of the fact that the merchandise was not tendered by defendant on an outside loading platform, but, with few exceptions, was inside the main wall of its building. The other common carriers were also obliged to go inside the wall of the building to collect the merchandise which they transported for defendant.

It will be helpful to describe briefly the warehouse and its facilities.

At the suggestion of both counsel, I visited and inspected the premises of the defendant, including the warehouse. The warehouse is a large brick building. It is situated on the east side of Exchange Street, in the city of Rochester. On the most northerly end of the building there is an open concrete loading platform, which is ten feet wide from north to south, and approximately 168 feet long from east to west. Entrance to this loading platform is afforded by a driveway leading easterly from the east side of Exchange Street directly to the platform. Immediately beyond and to the south of the loading platform, and contiguous to it, is a room which is forty-eight feet wide from north to south, and 168 feet long from east to west. The northerly wall of this room is a brick wall, which is one of the outside walls of the building. Entrance to this room from the outside platform is provided by seven overhead doors, open when loading operations are in progress, closed at night. This room is divided into bays, each twenty-four feet wide and twenty-four feet long.

Defendant contends that this room is a "platform" like the outside loading platform except that it is inside. Plaintiff claims that it is a shipping room and not a "platform". Let us for our present purposes designate it as the "bay room".

The "bay room" has, likewise, a concrete floor which is on a plane and unbroken level with that of the loading platform. Beyond, or south of, the "bay room" is the main warehouse in which the pooled merchandise of defendant is kept. This is a very large room, approximately 336 feet by 192 feet, and is separated from the "bay room" by a tile wall running to the ceiling.

Presumably all the items which plaintiff and the other carriers transported were originally kept in the main warehouse. In any event at the time that the plaintiff and the other carriers called at defendant's premises, the particular items to be picked up were located in the "bay room". The practice was to

install or place in one bay, all the items consigned to one city, and over these goods there was a sign suspended from the ceiling, bearing the name of such city.

As a result of this practice these items did not stand upon the outside loading platform and as a necessary consequence, the carrier was expected to and did walk across the ten-foot platform, into the "bay room" and with the aid of hand trucks provided by defendant, wheeled the goods out of the "bay room", across the ten-foot loading platform and onto the trucks. On such services the plaintiff predicates his claim.

A determination of the controversy presented requires a construction or interpretation of the tariffs. These are two in number. Exhibit 1, and particularly the part of it entitled "MOTOR FREIGHT TARIFF No. 1-C RULE 15" was effective from April 20, 1945, until August 25, 1947. Exhibit 2, and particularly the part of it entitled "MOTOR FREIGHT TARIFF No. 1-D ITEM 75" was effective from the date last named until the termination of plaintiff's relation with defendant. These tariffs were filed by the New York Motor Carriers' Conference, Inc., to which plaintiff adhered, and concededly were the tariffs binding on both plaintiff and defendant with respect to the operations which here concern us. For all practical purposes the parts of the Tariffs involved are similar. Item 75 of Exhibit 2 reads as follows:

PICK-UP AND DELIVERY SERVICE

(a) Subject to the provisions of Item 90, and "EXCEPTION" below, the rates published in tariffs governed hereby, include one pickup from one shipper at one time at one place, and one delivery to one consignee at one place, provided proper facilities are furnished by the consignor and/or consignee for loading and unloading of shipments.

(b) Shipments will be accepted at or delivered to doorway, platform or entrance to shipping or receiving room of consignor or consignee when directly accessible to carrier's motor vehicle at the street level of place of business, factory, store, plant, warehouse, residence or premises, which, if contiguous, shall not be deemed separated if intersected by a public street or thoroughfare.

(c) When doorway or entrance is not directly accessible to motor vehicle, pick-up or delivery will be made at a point accessible to motor vehicle and as near as possible to doorway or entrance.

(d) Pick-up and delivery service, as referred to herein, does not include removal from or delivery to the interior of a building nor basements or floors not directly accessible to carrier's motor vehicle. It does not include packing, unpacking, sorting, erecting, dismantling, hoisting, lowering, placing in position, or other service of a similar nature.

(e) When carrier upon request, is obliged to perform pick-up or delivery service to or from the interior of a building, basement or above the ground floor, where freight elevator service is available, or at point inaccessible to motor vehicle, an additional charge will be made for such service, viz.:

(1) At New York (Zones 1–2) 25 cents per 100 pounds, subject to a minimum charge of 50 cents per shipment.

(2) At all other points (except New York Zones 1–2) 11 cents per 100 pounds, subject to a minimum charge of 30 cents per shipment.

Plaintiff claims that subdivision (e) is applicable for the reason that his employees picked up the merchandise from the " interior " of the building. Defendant claims that subdivision (b) is applicable because the goods were accepted at the " platform ".

The court has come to the conclusion that if plaintiff's construction of the tariff be correct, he is entitled to recover because defendant's claim that plaintiff is not maintaining the suit in good faith, or that he is prosecuting the defendant to get even because defendant discharged him from its employ, is of no avail. These tariffs which were established in accordance with the provisions of the Public Service Law are binding on both plaintiff and defendant. Neither party may vary nor waive their provisions because this would effect an unlawful discrimination. (*Purcell* v. *N. Y. C. R. R. Co.*, 268 N. Y. 164, 171; *New York Central R. R. Co.* v. *Wurlitzer Mfg. Co.*, 222 App. Div. 716; *Baltimore & Ohio R. R. Co.* v. *Carnegie Steel Co.*, 251 F. 682, 684.)

This necessitates a construction of the tariff provisions to determine whether the goods in the " bay room " were on a " platform " or were taken from the " interior ".

We have seen that the tariff rates may not lawfully be varied or modified by either party. This is true even though the provisions were unreasonable or unfair. In the absence of ambiguity the rates stand until corrected in a statutory manner. (*Green Bay Lumber Co.* v. *Chicago, B. & Q. R. R. Co.*, 284 N. W. 369, 375 [Iowa], cited with approval by Supreme Court of Iowa in *Coon Val. Gravel Co.* v. *Chicago, R. I. & P. R. R. Co.*, 241 Iowa 487, 489.)

Let us first ascertain the meaning of the words " interior " and " platform ". Webster's New International Dictionary (2d ed.) defines " platform " as " a plane surface * * * any surface * * * a horizontal and generally flat surface, usually higher * * * than the adjoining ground ". Nothing in these and the other definitions found requires or even fairly implies that to constitute a " patform " a surface need be open or unenclosed.

" Interior " (noun) : " That which is within; the internal or inner side of a thing; the inside; the inland part of a country." (adj) : " Being within any limits, enclosure or substance * * * Remote from the limits, frontier or shore ".

It is clear that these terms are not completely definitive.

Since the north wall of the " bay room " is one of the main walls of defendant's building, strong support is given to plaintiff's claim that anything inside that room is within the " interior " of the building. If the alternate meaning given by Webster — " remote from the limits, frontier or shore " be taken, more uncertainty appears.

On the other hand the floor of the " bay room " which is contiguous to the floor of the outside platform, on a plane with it, and constructed of the same material, comes within one definition of " platform " despite the fact that it is not completely open.

It is assumed that the construction of a Freight Tariff involves considerations similar to those involved in other written documents such as statutes and contracts. The intention of the parties who framed the tariff, so far as it can be ascertained by the writing, itself, should be the guiding factor. In trying to ascertain such intention, the entire instrument rather than one isolated part of it should receive careful scrutiny.

It is noted that by subdivision (b) it is provided that shipments will be accepted at " doorway, platform or entrance to shipping or receiving room of consignor * * * when directly accessible to carrier's motor vehicle at the street level of * * * warehouse ". No distinction is here made between " platform ", on the one hand, or " entrance to shipping or receiving room ", on the other, provided the goods are " *directly accessible* " to the vehicle. Here accessibility is clearly made the essential condition of applicability. It is also to be noted that in subdivision (d) it is expressly provided that the pick-up service does not include removal from the interior of a building, or from a basement, or floors not directly accessible to carrier's motor vehicle, and of greater importance, that in subdivision (e), which specifies the surcharge for extra services not included in the regular pickup, the surcharge, viz.: eleven cents per one hundred pounds, applies equally to all three items mentioned above, viz.: removal from the interior of a building or a basement or above the ground floor or at a point inaccessible to motor vehicle, without distinction among the three. It is perfectly obvious that a requirement that the carrier pick

up goods from a basement or an upper floor would normally involve considerably more labor and more time and effort than would be caused by wheeling them on the same floor level from the " bay room " to the loading platform.

From this examination of the various provisions of the tariff, some doubt arises as to whether those who prepared it intended the word " interior " to be taken in the inflexible or " chalk line " sense proposed by the plaintiff. Those who drafted the tariff intended, no doubt, that it be given a reasonable and practical construction consistent with their everyday experience.

Is the construction for which the plaintiff contends reasonable and practical? A hypothetical case may be of help. In this instance the loading platform is ten feet wide and is completely open on all sides. Concededly a wall separates it from the " bay room ", from which the goods were picked up. Access to the " bay room " is effected through any one of seven doors conveniently and apparently equi-distantly located. Let us assume that the loading platform instead of being ten feet wide, was fifty-eight feet wide (the sum of the width of the existing loading platform and the " bay room "), or even seventy-five or eighty feet wide, and that it stood unenclosed and open. In such case plaintiff's employees would have to transport defendant's merchandise over as great a distance as they did in the instant case, and provided such hypothetical open loading platform were more than fifty-eight feet wide, the items would have to be wheeled for a considerably greater distance. Nevertheless, no claims for an additional tariff would be tenable because in such case the goods would be on a platform (subd. [b]) and not within the interior of a building (subd. [e]).

In the case with which we are concerned, plaintiff's employees were required to convey the merchandise on trucks a distance which varied from a few feet (in case the merchandise stood immediately inside the north wall of the " bay room ") to forty-eight feet (in case the goods stood against the south wall of the " bay room "). Accordingly the validity of plaintiff's contention seems to depend entirely upon the existence of the northerly wall of the " bay room " and if such wall were knocked out, the plaintiff's claim would fall with it, since it is the presence of that wall, and that alone, that tends to support plaintiff's contention that the goods were picked up from the " interior " of defendant's building.

So tested, a very considerable doubt is raised as to whether such an artificial test is to control.

It appears that the other four or five carriers who operated during the period for which this suit is brought also were obliged to enter the " bay room " for the purpose of securing the merchandise, and they did so enter and loaded the merchandise on their trucks and carriers, precisely as did plaintiff. Apparently they have made no claim for the extra tariff. Plaintiff, himself, commenced this action by a summons which was dated September 5, 1951, which means that he first asserted his claim some two years after his relations with the defendant had terminated.

Both plaintiff and these other carriers are and were practical men presumably competent in their everyday dealings to determine what such a tariff fairly and reasonably intended and how it was to be interpreted. True, they could not vary or change it but their practical construction of it is of some help to the court. " Thus in a doubtful case a construction placed upon a statute by the parties affected, and acquiesced in for a long period, will be followed by the court ". (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 128, p. 202.)

That the acts of the parties and other persons in similar circumstances are an important consideration in assisting a court in an interpretation of a tariff, was expressly determined by *New York Central & H. R. R. R. Co.* v. *General Elec. Co.* (219 N. Y. 227) where Judge CARDOZO stated that what was customary and reasonable by way of delivery was the deciding factor and to resolve the question of custom, practices prevailing in plants other than that of defendant, as well as in the defendant's plant, could be considered.

The tariff in this case was written by the plaintiff or on his behalf. Accordingly, under well recognized principles any ambiguity in it should be resolved in favor of the defendant. (13 C. J. S., Carriers, § 303, p. 706; 9 Am. Jur., Carriers, § 144, p. 526; *United States* v. *Gulf Ref. Co.*, 268 U. S. 542.)

If two provisions of the tariff (in our case subdivision b and subdivision e) are of equal application, the defendant has a right to avail himself of the one which imposes the lesser cost upon him. (*Saalfield Pub. Co.* v. *Public Utilities Comm.*, 149 Ohio St. 113; *United States* v. *Gulf Ref. Co.*, 268 U. S. 542, *supra*.)

As to the extra charge specified in subdivision (e) of the tariff, for those items which plaintiff was obliged to pick up from the " bay room ", I conclude that he has failed to establish his cause of action, and that as to them the complaint should be dismissed. There were some items which plaintiff's employees

stated they were obliged to secure from points clearly inaccessible to the motor vehicle, e.g., from the ground beyond the end of the loading platform, or well within the main part of the warehouse, where they had to be located and picked off the floor. As to these items, which I hold were not conveniently and directly accessible to plaintiff's motor vehicle, subdivision (e) of the tariff is clearly applicable and for picking up these items, plaintiff is entitled to the additional charge there specified. For the purpose of identifying each of such pickups and determining the amount due to the plaintiff therefor, a reference or additional hearing may be had unless the parties can agree upon such amount. Accordingly, if no such agreement is reached promptly, an application may be made for such reference, within ten days after the service of an order hereon.

The foregoing is my written and filed decision in compliance with section 440 of the Civil Practice Act.