## Bell Telephone Co. v. Pittsburgh

*Everett K. Dilworth* and *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Regis Nairn,* Assistant City Solicitor, for City of Pittsburgh.

*Edmund W. Ridall, Jr.,* Assistant Solicitor, for School District of Pittsburgh.

GUFFEY, J., February 21, 1963.—The Bell Telephone Company of Pennsylvania is a domestic corporation engaged in the business of furnishing telephone services to Pennsylvania subscribers, with principal address at 1835 Arch Street, Philadelphia, Pennsylvania. It is a public utility, subject to the regulatory jurisdiction of the Public Utility Commission under the Public Utility Law of May 28, 1937, P. L. 1053, as amended, for furnishing of intrastate telephone services, and the jurisdiction of the Federal Communications Commission under the Communications Act of June 19, 1934, 48 Stat. 1064 in relation to interstate telephone services.

Pursuant to the provisions of the Act of June 25, 1947, P. L. 1145, the City of Pittsburgh on or about January 1, 1948, and as amended thereafter, promulgated mercantile license tax regulations governing the licensing and taxing of vendors or dealers in goods, wares and merchandise. Defendant, School District of Pittsburgh, under the Act of June 20, 1947, P. L. 745, adopted a resolution on November 28, 1947, imposing a mercantile license tax for the fiscal year beginning January 1, 1948, and as amended in the years thereafter.

On May 18, 1962, pursuant to the above statutes and ordinances, defendants, City of Pittsburgh and School District of Pittsburgh, assessed Bell Telephone Company of Pennsylvania mercantile taxes for each year for the period of 1954 through 1962, with interest and penalties, amounting to $4,051.60 for the city and $1,966.45 for the school district.

The assessments are based on receipts derived from the disposal of lead, wire and cable, junked after salvage from their original use in providing telephone service. Also assessed with the mercantile tax were receipts from Bell's sales of telephone directories to subscribers, to other telephone companies whose facilities connect with Bell, and to other members of the public who use Bell's facilities.

The pertinent issue to be resolved in this case is whether or not Bell was a vendor or dealer in goods, wares and merchandise as contemplated by the Mercantile Tax Acts for the City of Pittsburgh as well as the school district.

It is the contention of the school district that despite any exemptions which might be provided Bell under the Act of June 25, 1947, governing taxation by the City of Pittsburgh, the school district is not affected as its statutory authorization under the Act of June 20, 1947, does not provide such exemptions. However, we believe this argument is without merit as Bell in its transactions cannot be construed a vendor or dealer within the meaning or intention of either act. Also, the statutory prohibition against taxation of public utilities is provided by provisions of the Public Utility law. These latter considerations are not pertinent if Bell is not a vendor or dealer as contemplated by the acts. In the popular sense and as construed in numerous cases in which the appellate courts have considered the term, vendor or dealer means one who buys to sell, not one who buys to keep or makes to sell: Black's Law Diction-

ary; Commonwealth v. Lutz, 284 Pa. 184, 130 Atl. 410.

In Norris Brothers v. Commonwealth, 27 Pa. 494, a dealer is one who buys something in order to sell it. See also Paper Products Co. v. Pittsburgh, 391 Pa. 87, 137 A. 2d 253.

In the case of Equitable Gas Co. v. Pittsburgh School District, 404 Pa. 321 (1961), the Supreme Court has held that public utility companies in accordance with their common popular meaning have never been considered to be vendors or dealers in goods, wares and merchandise and therefore, were not within the class covered by the mercantile statutes, whether excluded specifically by those acts, as in the Act of June 25, 1947, P. L. 1145, or not excluded as in the case of the Act of June 20, 1947, P. L. 745.

The school district here does not argue that any of the other transactions of Bell Telephone are taxable, such as their return from customer billage in providing telephone service, but only those transactions involving salvage materials and providing directories. This argument appears specious when it becomes apparent that Bell is not in the business of salvaging materials or selling directories, and any returns on these endeavors are due to prudent management in providing the service for which they have been chartered at the lowest cost possible. The printing and, where possible, selling of directories is as indispensable to providing its service as the dial on the telephone. Would the city and school district claim that an extra charge for a more elaborate telephone, or additional extensions in a home or business, warranted taxation of those installations, as these were not really essential to the comfort of the service?

The city school district alleges in its brief that while Equitable in furnishing gas was not taxable in that function but was taxable in the sale of stoves and refrigerators, as these sales were not incidental to sup-

plying gas. This may well be true but the analogy is inapposite since many individual manufacturers produce these articles and their sale or the sale of any particular line of them is a matter not related to increasing the consumption of gas, is a separate and distinct function neither necessary to nor part of the manufacture, sale and providing the public service. Here, the sale of salvage material directly relates to the service of the consumer, as the profit rate of such utility is strictly regulated and any return on the sale of salvage material directly relates to the cost structure of the service offered. Directories sold also serve to reduce the cost of providing the service and since some of the customers require directories in excess of what the service rate entitles them to, it is only reasonable that they should bear the additional expense rather than apportion it among the other users who do not benefit from it. In addition, the production and sale of directories is an absolute requirement of providing the service for which Bell was chartered. If Bell did not provide the directories there would be none and it is unlikely that there would be a very extensive service provided.

For these reasons we are unable to see the validity of the claims of the taxing authorities against Bell for the tax imposed upon it during the years in question, and we therefore conclude that the appeal of Bell Telephone Company must be allowed and that the taxes imposed thereon be stricken.

### Order

And now, February 21, 1963, after hearing all of the evidence and arguments of counsel in open court, after carefully considering them, the briefs filed and the entire record, the appeal of the Bell Telephone Company is sustained, the deficiency assessments are declared null and void and are hereby stricken.