## Commonwealth v. Carlow-Patton Corporation

*Vincent Yakowicz,* for Commonwealth.

*John McI. Smith,* for appellant.

HERMAN, J., December 5, 1966.—This case involves the imposition of a use tax on the use of a Lima power shovel and a bulldozer purchased by appellant, and used exclusively by it during the time in question, for the removal of rocks, sand, trees, shrubs, and other materials which covered certain flue dust,[1] and then digging out said flue dust and loading it on freight cars.

A complete use tax audit of the books of appellant from January 1, 1958, to March 31, 1962, disclosed the purchase and use of these items of heavy equipment and a tax, which, with interest and penalty, amounted to $4,873.39, was imposed. Subsequently, an adjustment of penalties and interest reduced this amount to $4,053.65.

After appropriate departmental review resulted in the sustaining of the tax, taxpayer appealed to this court. By a stipulation in writing, the parties agreed that this case might be heard without a jury, pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688.

All of the facts were stipulated by the parties, and we herewith adopt them as our findings of fact, re-

---

[1] Flue dust is defined as "Finely divided metal or metallic compounds escaping with the flue gases of a smelter or metallurgical furnace".

ferring to such as are necessary to an understanding of this opinion.

Appellant contends that because of the manufacturing exclusion contained in the Selective Sales and Use Tax Act (now the Tax Act of 1963 for Education), Act of March 6, 1956, P. L. (1955) 1228, as amended by the Act of April 5, 1957, P. L. 34, 72 PS §3403-1, et seq., it is exempt from the tax. The Commonwealth, of course, contends otherwise.

In the definition section of the act, 72 PS §3403-2, the word *"Manufacture"* is defined, in pertinent part, as:

"The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, . . . and shall include, but not be limited to—. . . .

"(3) Refining, exploring, mining and quarrying for, *or otherwise extracting from the earth or from waste or stock piles or from pits or banks, any natural resources, minerals and mineral aggregates, including blast furnace slag"*.[2]

In the same section of the act, in the definition of the word *"Use"*, we find that:

"[T]he term 'use' shall not include [the following:]. . . .

"(c) The use or consumption of tangible personal property including, but not limited to machinery and equipment . . . directly in any of the operations of . . . .

"(i) The manufacture of personal property. . . ."

It seems clear to us that in contradistinction to "exemption", the legislature intended the manufacturing provision to be an "exclusion" from the tax, for in the same section of the act in defining "use", the reference to manufacturing specifically calls it an *exclusion*

---

[2] Italics ours throughout unless otherwise indicated.

from the definition of "use", and presumably, therefore, excluded from the imposition of tax on the use. In Commonwealth v. Sitkin's Junk Co., 412 Pa. 132, 135 (1963), Mr. Justice Jones, writing for a unanimous court in construing the manufacturing provision of the Selective Sales and Use Tax Act, the very provision of same under consideration in the instant case, says:

"The Act (Section 2(j), 72 PS §3403-2), in defining a 'Sale at Retail' of tangible personal property upon which the tax is imposed under Section 201(a), *specifically excludes* a transfer of tangible personal property either for the purpose of resale or of 'machinery and equipment . . . to be used . . . in any of the operations of—(a) The manufacture of personal property . . . ' and the Act (Section 2(n), 72 PS §3403-2), in defining 'Use' of tangible personal property, *specifically* excludes the ' "Use" . . . of tangible personal property . . . in any of the operations of —(i) The manufacturer of personal property: . . .' " (Italics in original).

As an exclusion, the taxpayer does not have as heavy a burden as it would were we dealing with an exception. In any event, we must conclude that the taxpayer has here met its burden.

From the stipulated facts, we find that sometime in 1958, the United States Steel Corporation Raw Materials Division realized that many years before the company had deposited between two hills at Mifflin Junction, in Allegheny County, on its own property, flue dust to a depth of 21 feet in a depression about 2,500 feet in length and 10 to 40 feet in width; and that while this flue dust had been considered worthless when deposited, present methods for its use made its recapture and reprocess economical. This deposit had become covered by rocks, sand, shrubs and trees, and United States Steel entered into a contract with

appellant, a Pennsylvania corporation,[3] for the digging and drilling of approximately 26 test holes, and after these test holes disclosed that the material between the two hills contained between 55 percent and 62 percent pure flue dust, entered into a formal contract with appellant for the reclaiming, screening, and loading on railroad cars of the 40,000 tons of flue dust.[4] It was for this work that appellant purchased the heavy equipment previously referred to, which equipment was used exclusively in this work.

The Commonwealth contends that appellant's activity was not mining, and with this we can agree. It further contends that flue dust is not a mineral or a natural resource, and with this, too, we can agree. We can also agree that appellant was not engaged in refining, exploring, or quarrying; but these conclusions do not govern the case.

The definition of manufacture, the activity excluded from "use" and thus f r o m the tax, reads, in part, that "Manufacture . . . shall include, but not be limited to . . . *extracting . . . from waste . . . piles or from pits or banks, . . . mineral aggregates, including blast furnace slag. . . .*"

We need not be concerned with mining or quarrying, for appellant certainly *extracted* something from waste piles or pits or banks. Our only concern, then, is the nature of the object extracted. Does flue dust come within the term "mineral aggregates, including blast furnace slag?" We conclude that flue dust is mineral aggregate and, in fact, is a form of blast fur-

---

[3] One of the purposes for which this corporation was created was "To deal in property, both real and personal and interest therein and to acquire, own, lease, mortgage, occupy, sell, *use or develop any lands containing coal, coke, iron, ores or stone for the purpose of the corporation*".

[4] Of course, the overburden had to first be removed, but we view this as incidental to the main purpose of the contract, which was extracting the flue dust.

nace slag. The word "mineral" is not per se a term of art or of trade, but of general language (Highland v. Commonwealth, 400 Pa. 261, 275 (1960)), and when coupled with the word "aggregate", which means "a mass, assemblage or sum of particulars" (See Webster's New International Dictionary, 2d ed.), it has a much broader meaning than when standing alone. The legislature recognized this when it specifically included in "mineral aggregates" the words "blast furnace slag". We believe that mineral aggregate is broad enough to include flue dust, but even if it were not, "blast furnace slag" certainly does. Although "slag" may, as the Commonwealth contends, sometimes indicate a large, rock-like cinder, this is not the true or only meaning of the word.

Words in a statute must, where the statute does not define them, be given their "common and approved usage", and if they are technical and have acquired a peculiar and appropriate meaning, then they "shall be construed according to such peculiar and appropriate meaning": Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533.

Webster's New International Dictionary (2d ed.) defines "slag" in part as: "The dross, scoria, or recrement, of a metal; specif., a product of smelting. . . ." Dross is further defined as "waste matter; any worthless matter separated from the better part. . . ." Scoria is defined as "the refuse from melting of metals, reduction of ores, etc.", and recrement as "superfluous matter separated from that which is useful. . . ."

Nowhere in the definition is there any indication that slag must be of any particular size or composition, or that it must come from the grates of the blast furnace rather than from the flues.

In Foulke v. Miller, 381 Pa. 587 (1955), where the dictionary's definition of slag is approved, there is

added, "called also esp. in iron smelting, *cinder*". And "cinder" in Webster's New International Dictionary (2d ed.) is defined as "the residue of anything burnt. . . ." See also Baltimore & O. R. Co. v. Carnegie Steel Co., 251 Fed. 682, 684 (1918), where it is said, "We know that 'slag' is a refuse from metallic ores after being smelted".

A taxing statute must be strictly construed, and if there is any reasonable doubt as to its interpretation, that doubt must be resolved in favor of the taxpayer and against the taxing authorities: Equitable Gas Company v. Pittsburgh School District, 404 Pa. 321 (1961).

We must conclude that the activity of appellant here was manufacturing within the terms of the act, and the use of the heavy equipment in this activity was not taxable under said act.

## CONCLUSIONS OF LAW

1. The activities of appellant in reclaiming, screening and loading on railroad cars the flue dust were manufacturing, as defined in the Selective Sales and Use Tax Act (now the Tax Act of 1963 f o r Education), Act of March 6, 1956, P. L. (1955) 1228, as amended by the Act of April 5, 1957, P. L. 34, 72 PS §3403-1, et seq.

2. The use of the Lima power shovel and the bulldozer purchased by appellant for and used exclusively in said activities, was not taxable under said act.

3. The appeal of Carlow-Patton Corporation from the decision of the Board of Finance and Revenue, refusing its petition for review and sustaining the decision of the Sales Tax Board in imposing the use tax on the use of said heavy equipment, should be sustained.

## ORDER

And now, December 5, 1966, the appeal of Carlow-Patton Corporation from the decision of the Board

of Finance and Revenue refusing its petition for review and sustaining the decision of the Sales Tax Board in imposing the use tax on the use of a Lima power shovel and a bulldozer, in the amount of $3,-325.25, with interest, for the period from January 1, 1958, to March 31, 1962, is sustained and the assessment stricken, and judgment in favor of Carlow-Patton Corporation is hereby directed to be entered unless exceptions hereto are filed within 30 days of service hereof as provided by law.

The prothonotary is directed to notify all parties or their counsel of this order forthwith.