## Commonwealth ex rel. v. Beamish, Secretary of Commonwealth

*Scott S. Leiby* and *Andrew G. Smith,* for petitioner.
*William A. Schnader,* Attorney General, for defendant.

HARGEST, P. J., November 2, 1933.—On October 25, 1933, the petition in this case was presented and a writ of alternative mandamus awarded thereon, returnable October 30, 1933. At the hearing on October 30, 1933, the Attorney General presented a motion to quash on the ground that a private party has no right to bring a suit in the name of the Commonwealth without the consent either of the Attorney General or of the district attorney, whereupon the title in the case was amended by striking out the words, "Commonwealth of Pennsylvania ex rel. David L. Lawrence." The two parties remaining as plaintiffs are candidates for the office of Judge of the Court of Common Pleas of the County of Allegheny. Thereupon the Attorney General filed a return to the writ, striking out, however, the first two paragraphs of the return as submitted to the court, and the plaintiffs then formally demurred to the return.

The pleadings therefore raise two questions:

1. Whether the petition for mandamus is not too late; and,

2. Whether the Act of June 10, 1893, P. L. 419, prescribing the form of ballots, requires the first place on the ballot in any election, other than that for presidential electors, to be determined by the party having the highest vote in the county at the last presidential election.

Section 9 of the Act of 1893, as amended by the Act of April 29, 1903, P. L. 338, requires the Secretary of the Commonwealth to transmit to the county commissioners and the sheriff in each county, at least 14 days prior to the day of election, duplicate official lists arranged substantially in the form of the ballot to be used therein; and requires the county commissioners in each county to send to the sheriff of the county, at least 10 days prior to the day of election, an official list to be voted for at each voting place in the county, substantially in the form of the ballot to be used therein.

The return filed shows that the Secretary of the Commonwealth had fully complied with the provisions of the law and certified accordingly, so that the petition for mandamus was filed too late; and upon the hearing of October 30, 1933, it was stated in open court by the assistant county solicitor of Allegheny County that the county commissioners have also complied with their duty under the statute, and at that time 75 percent of the ballots had been actually printed.

We might rest our conclusion on the record and dismiss the petition as being too late, but we think we should to some extent at least discuss the second question.

The Act of 1893, as amended by the Act of April 29, 1903, P. L. 338, provides in part, in section 14:

"When Presidential electors are to be voted for, the names of candidates for Presidential electors shall be arranged in party groups, as presented in the several certificates of party nomination and nomination papers, and the groups shall be printed upon the ballot in order of the vote obtained in the State, at the last Presidential election, by the parties nominating, beginning with the party which obtained the highest vote: . . .

"The names of candidates for all other offices, shall, in all cases, be arranged under the title of the office for which they are candidates, and be printed in the order of the votes obtained for the head of the respective tickets of the parties or bodies nominating at the last Presidential election, beginning with the party obtaining the highest vote: . . ."

By the Act of June 22, 1931, P. L. 628, it was provided that the name of presidential electors should be omitted from the ballot and only the name of presidential candidates inserted, but this has no bearing on the present case.

The precise question before us is whether under the first provision of section 14 of the Act of 1893, as amended by the Act of 1903, the right to the first place on the ballot shall be determined by "the vote obtained in the State, at the last Presidential election," or, as to candidates for offices to be voted for in the county, the right to the first place on the ballot shall be determined by the party receiving at the last presidential election, the highest vote in the particular county. The first paragraph of section 14, relating to presidential electors, provides that the party right shall be determined "in order of the vote obtained in the State." The fourth paragraph of section 14 provides, in the case of candidates for all other offices, that they shall "be printed in the order of the votes obtained for the head of the respective tickets of the parties or bodies nominating at the last Presidential election". The words "in the State" are left out in this paragraph, and the plaintiffs insist that because those words are omitted we should read into the last provision the words "in the county", and determine that in the case of all candidates except presidential electors, whether the vote for such candidates is county-wide or more, the party place on the ballot should be determined by the vote in each county. This may result in having the Democratic Party occupy the first place on the ballot for three elections immediately after one presidential election, and when it came to the next presidential election the Republican Party would occupy that place, all depending on the vote

at one presidential election. That is to say, for 3 years, because there were no presidential electors to be elected, the place would be determined by the county vote, and the fourth year, when there were presidential electors to be elected, it would be determined by the previous State-wide presidential vote.

Certainly the statute is not clear, and therefore we may resort to administrative and legislative interpretation. The return avers (and the truth of it is admitted by the demurrer) that the administrative interpretation of the statute for 40 years has been that the State-wide presidential vote determines the place on the ballot. In 59 C. J. 1029, it is said:

"The courts are reluctant to overthrow a long-followed executive construction of a statute where to do so would work injustice, unsettle titles, or prejudice persons who have acquired contract or property rights in reliance on such construction, and the executive construction will control under such circumstances, unless it is manifestly wrong, or unless some great public measure, benefit, or right is involved; and some authorities have held that such a construction will be followed even though erroneous.

". . . Executive construction is entitled to additional weight where it has been impliedly indorsed by the legislature, as by the reënactment of the statute, or the passage of a similar one, in the same or substantially the same terms, or by failure of the legislature, with knowledge of such construction, to change the law".

In the same volume, page 1033, it is said:

"A construction of a statute by the legislature, as indicated by the language of other or subsequent enactments, is entitled to consideration as an aid in interpreting the statute, and is sometimes of great weight or highly persuasive, especially where such construction has been long continued".

In view of this long acquiescence by both the legislature and the administrative department, the court should not lightly overturn this construction. Of course, where a statute is clear, neither legislative nor administrative interpretation is to govern, but where there is ambiguity recourse may be had to such legislative or administrative interpretation to aid in its construction. The legislature amended the Act of 1893 in 1903 and in 1931, and these provisions were untouched.

In Commonwealth v. Gilligan, 195 Pa. 504, section 41 of the Act of May 23, 1874, P. L. 230, which is the act relating to third class cities, was attacked as unconstitutional. Sections 41, 42, 43, and 44 thereof related to the government of school districts, yet there was no suggestion in the title that anything relating to school districts was included in the body of the act. The court said (p. 511):

"The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions. While these are not reasons for refusing to declare it void if in contravention of the constitution, yet they are strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it our duty now to set it aside: . . ."

In Sugar Notch Borough, 192 Pa. 349, 358, the Act of June 1, 1887, P. L. 285, a supplement to the Borough Code of April 3, 1851, P. L. 320, was under attack as to its constitutionality. The court said:

". . . It is not inappropriate to direct attention to the fact that the act of 1887 has been in operation for twelve years, has been twice previously before this Court, and has been the ground of action many times before other courts without objection to its constitutionality. It is rather late now to question it. . . ."

We adopt this language as applicable to the case now before us. The legislature, having had the act twice before it for amendment, did not see fit to change the interpretation given by the administrative department. We must assume that the legislature knew the interpretation which the administrative department of the government put upon it, and continued the act in force without amendment. The legislature therefore must be considered as having also adopted that interpretation. The statute is not clear, and we are asked, by making the county the unit, to read something in it which cannot be found there in terms, and thereby to set aside the interpretation which has been acquiesced in for 40 years. This we decline to do. We think it follows that the petition for mandamus must be dismissed.

And now, November 2, 1933, the petition for mandamus is hereby dismissed at the cost of the plaintiffs.　　　　　From Homer L. Kreider, Harrisburg, Pa.