## Simpson's Estate.

Argued September 26, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*G. Von Phul Jones,* with him *Frederick R. Gillinder,* for appellants.

*James J. Hayes,* with him *Guy K. Bard,* Attorney General, and *E. Russell Shockley* and *Edward Shippen Morris,* Deputy Attorneys General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MAXEY, December 5, 1938:

Testator, who died in 1908, left the residue of his estate in trust for the benefit of his widow, children and grandchildren, the income to be paid them during their lives, remainder, on the death of the surviving grandchild, to the Methodist Episcopal Hospital of Philadelphia, a charitable organization. Shortly after decedent's death the executors paid collateral inheritance tax of $518.20 on account, in order to release the lien on certain real estate forming part of the trust. Testator's widow and children are now dead, but three grandchildren survive, who, prior to the present proceeding, were the life tenants of the trust. When the trustee's present account was filed in May, 1937, all the parties in interest, life tenants and remainderman, filed a petition to terminate the trust by agreement under the Act of April 14, 1931, P. L. 29 (amending the Act of April 18, 1853, P. L. 503, 20 P. S., sec. 3251). By the agreement of the parties, the Methodist Episcopal Hospital, the remainderman, was to receive a cash award of $28,000 "in full consideration and release of its entire interest in the estate," the three life tenants to share the balance equally.

The auditing judge in the court below, agreeably to the wishes of the parties, terminated the trust and made the awards as desired. Thereupon the register of wills, acting pursuant to the Act of May 6, 1887, P. L. 79 (in force at the death of testator and hence applicable to

this estate), assessed collateral inheritance tax against the cash award of $28,000 to the hospital at the rate of 5 per cent, or $1,400, less the sum of $518.20 previously paid, or a net tax of $881.80. The court below sustained the award on this basis, and all the parties in interest have appealed, complaining that the assessment should have been on the basis of the computed value of the remainder interest at the time of the award, by valuing the corpus of the estate and deducting therefrom the value of the life estates appraised by the usual actuarial methods, disregarding altogether the actual amount receivable by the remainderman under the terms of the agreement. Since all the life tenants are comparatively young and have long life expectancies, this would result in a very low appraisement of the remainder interest, so low, in fact, that allowing credit for the amount paid on account many years ago, there would be no tax now due.

In sustaining the assessment as made the court below enforced a literal compliance with the requirements of the Act of 1887, supra. We find nothing in the arguments advanced by appellants which would support a contrary view. Section 3 of the act provided that "the tax . . . shall not be payable . . . until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner as aforesaid." The party entitled to the subsequent interest is given a choice, however, "to pay the tax at any time prior to his coming into possession, and, in such cases, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years." Here the remainderman elected not to avail itself of the second alternative, but to wait and pay the tax after acquiring the right to possession of its estate, by which time the value of its interest was definitely and finally established in the agreed sum of $28,000. The

trust was "settled and ended" (in the words of the Act of 1931, supra) by the decree of the court "upon terms mutually satisfactory" to the parties. In such case no right remains to pay the tax on a basis actuarily computed by deduction of prior life interests, because the Act of 1887 expressly limits this right to the period "prior to his [the remainderman's] coming into possession."

This phrase cannot be interpreted as meaning "actual possession," in the sense of receipt of an award or distribution of the estate, for otherwise a remainderman would be entitled to pay the tax on the basis of an assessed valuation made even after the death of life tenants, but before distribution is made, whereas we have held that in such case the assessment must be based on the value of the remainder interest at the death of the life tenant: *Coxe's Estate*, 193 Pa. 100, 44 A. 256; *Coxe's Appeal*, 181 Pa. 369, 37 A. 517. The rest of the proviso in the Act of 1887, calling for deduction of "the value of the life estate or estates for years," would be rendered meaningless by such an interpretation, since in the instance given the life estates, after the death of the life tenants, could no longer have any value whatever. This clause must therefore be held to mean that the owner of the subsequent estate has the option of paying the tax at any time prior to the moment when "the right of possession accrues" to him. This is the phrase used in section 3 of the statute (see page 80 of Pamphlet Laws of 1887).

As we construe the act, we reach the conclusion that the remainderman's "right to pay the tax" on a *calculated appraisement* expired at the time of the adjudication of the auditing judge making the awards to the parties on the basis of their agreement to terminate the trust. When the register of wills subsequently filed his appraisement the remainderman's right of possession had accrued. Under the preceding clause of the act, the valuation had then to be made as of the time of accrual,

the life estates having terminated by agreement of the parties and action of the court pursuant thereto. At that time the value of the remainder was the cash award of $28,000.

The case on which appellants chiefly rely, *Rowell's Estate,* 315 Pa. 181, 173 A. 634, has no application, for there the only question involved was the time at which valuation should be made of a life estate preceding a remainder, under the Act of June 20, 1919, P. L. 521, which supplanted the Act of 1887, supra. The case did not deal with the question of when the assessment should have been made on the remainder interest. It was held that the life estate must be valued *as of the date of testator's death,* when the same became vested in enjoyment in the life tenant, and that the mere adventitious circumstance of the life tenant's death *prior to payment of the tax* would not justify a reduction in the appraisement of the life estate. In the present case there was no need to appraise the life estates to children and grandchildren, since these were subject to no tax under the Act of 1887, supra.

It cannot be validly contended that the assessment was made before the remainderman had acquired the right of possession of its estate, which, as we have pointed out above, is the determining date, when prior to the date of the assessment the parties had entered into a formal agreement fixing the amount of the remainderman's interest, had petitioned the court to terminate the trust and had secured an adjudication making the award. It might as well be argued, in the case which usually arises, that the death of the life tenant does not determine the accrual of the right of possession, because the party cannot have actual possession until his estate is awarded him by a decree of the Orphans' Court.

We find nothing in the cases cited by appellant which would imply a contrary conclusion. In *Pepper's Estate,* 159 Pa. 508, 28 A. 353, a payment was authorized by col-

120

lateral legatees to a party contesting the will and it was held that inheritance tax was not chargeable on such payment, which never passed to the legatees. A similar problem was likewise disposed of in *Kerr's Estate,* 159 Pa. 512, 28 A. 354. In the present case the legatees, both life tenants and remainderman, were recipients of the entire assets of the estate, and these unquestionably passed to them by virtue of testator's will. The fact that the valuation of the remainder interest was fixed by the parties, conformably to the Act of 1931 granting authority to do so in the special instance of a charitable bequest, and not by the natural course of events which ordinarily brings a life estate to its close, cannot affect the question of its taxable value. The parties agreed upon no release or purchase, but upon a stated payment to the remainderman which should constitute its interest in the estate, whatever the form of words in which they clothed their understanding.

The decree is affirmed, at appellants' cost.