## Pickering Estate.

Argued January 16, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Irvin Stander,* Special Assistant Attorney General, with him *Robert W. Valimont,* Special Assistant Attorney General, *Ralph S. Snyder,* Deputy Attorney General, and *David Stahl,* Attorney General, for Commonwealth of Pennsylvania, Department of Revenue, appellant.

*Hale Pratt,* with him *Vanartsdalen & Pratt,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 16, 1963:

H. Russell Pickering died on December 7, *1955* leaving a Last Will dated August 7, 1953. Testator provided in ITEM 1:

"I direct that my Executor pay all my just debts and funeral expenses as soon as possible after my decease; and that the same together with all Transfer Inheritance Taxes, Federal Estate Taxes and other taxes be paid from my residuary estate,* . . ."

In the eighth item of his will testator gave his residuary estate "[a]fter payment of my just debts, taxes and cost of the administration of my estate and the specific legacies" to his trustees.:

"(a) to hold three quarters of this remainder as a Trust Fund for the benefit of my niece Anna Winifred Beatrix Lockhart" and to pay over the net income

---

\* Testator did not add "as soon as possible after my decease."

therefrom to her for life and after her death to pay the principal "to any child or children of my said niece as each may become of legal age, share and share alike; the issue of any child to take the share its parent would have received if living. . . .

"(b) to pay over and distribute the other one quarter of the aforesaid remainder of my estate as soon as it can conveniently be done, to the children of my aunts Hannah Barnsley Chambers and Elizabeth J. Comfort and to the children of my uncles William Barnsley and J. Herman Barnsley, share and share alike; and in case any of such children are not living at the time of my death then their share to go to their children."

The executor paid the Pennsylvania Transfer Inheritance tax on all bequests and on all interests *except the remainder interest* in three-quarters of the residuary estate which was set up as a trust fund for and bequeathed to the children and issue of Anna after her death.

After the confirmation of the executor's account, the Court filed an opinion and an order in which it held that Pickering's will required all inheritance taxes upon future as well as upon present interests to be paid by the executor, and that until such tax payments were made, a final award to the trustees could not be made.* Accordingly, the executor paid the inheritance tax "due by reason of present interests under Pickering's will" on April 25, 1958. Thereafter the executor requested the Register of Wills to assess inheritance tax upon the remainder to Anna's children and issue for the purpose of prepaying such tax.

The Commonwealth claimed a collateral inheritance tax on the remainder set apart for Anna's children and

---

* The question of the correctness of this interpretation has not been raised by anyone and it is unnecessary for this Court to decide it.

642

issue based upon the value of their remainder interest at the date of testator's death.* The executor on the other hand contended that the tax should be based upon a taxable value of the gifts in remainder, *computed as of February 9, 1959*** instead of the date of testator's death. More specifically, the Commonwealth contends that in determining the value of the aforesaid remainder interest for inheritance tax purposes, all Federal Estate taxes theretofore paid must be included, i.e., added back, to increase the total value of the taxable remainder given to Anna's children and issue.

The solution of this issue depends upon (a) the language of testator's will and (b) more importantly, the correct interpretation of Sections 1, 2 and 3 of the Act of June 20, 1919, P. L. 521, as amended.*** That Act was applicable to estates of decedents dying before January 1, 1962. Section 1 pertinently imposes an inheritance tax upon the transfer of any property, real or personal, or of any interest therein. The extent, determination and measurement of the tax are specifically set forth in Sections 2 and 3. Section 2 provides:

"All taxes imposed by this act shall be imposed upon the *clear value**** of the property* subject to the tax 'and shall be at the rate . . . of fifteen per centum upon the clear value of *the property subject to such tax* passing to . . . [collaterals] . . . *In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values* of such estates . . . shall be [the debts of the decedent, funeral expenses, perpetual care of family burial lots, grave monuments and markers and expenses of administration] . . . and no

---

* A tax of $418,898.55, based upon a taxable remainder of $2,792,656.97.

** A tax of $207,542.52, based upon a taxable remainder of $1,383,616.83.

*** 72 PS §§2301, 2302, 2304.

**** Italics throughout, ours.

deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States or to any other State or Territory. . . ."

Section 3 pertinently provides: "Where there is a transfer of property by a . . . bequest . . . liable to the tax hereinbefore imposed, which . . . bequest . . . is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, *the tax on such estate shall not be payable,* nor shall interest begin to run thereon, *until the person liable for the same shall come into actual possession of such estate* by the termination of the estates for life or years. The tax shall be assessed *upon the value of the estate at the time the right of possession accrues to the owner,* but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be *assessed on the value of* ·*the estate at ,the time of the payment of the tax,* after deducting the value of the life-estate or estates for years. . . ."

The aforesaid words "shall not be payable" have been construed to mean shall not be payable *or demandable* by the Government: *Constable's Estate,* 299 Pa. 509, 149 A. 743; *Shugars v. Chamberlain Amusements Enterprises, Inc.,* 284 Pa. 200, 130 A. 426; *De-Borbon's Estate,* 211 Pa. 623, 61 A. 244; *Coxe's Estate,* 193 Pa. 100, 44 A. 256, and *Thompson Estate,* 86 Pa. D. & C. 584. We further note that the language providing for the assessment and payment of the tax on a remainder interest could not be clearer; and no reference whatsoever is made therein to the subject of deducting or adding back Federal (or other State) taxes in determining the taxable "value of the estate at the time of the payment of the tax."

The Register of Wills sustained the Commonwealth's position and appraised the tax on values *as of the date*

*of Pickering's death.* The executor's appeal from such appraisement and assessment was sustained by the Orphans' Court, and from that Court's final decree the Commonwealth took this appeal.

The first and most important question is, we repeat, the proper method of valuing and computing the Pennsylvania Transfer Inheritance tax on a future or remainder interest arising after a life estate (or an estate for years). It is hornbook law that Sections 2 and 3 must be read and construed together, as well as in conjunction with any other pertinent provision of the Act. If Section 2 stood alone, we would consider it ambiguous and equally susceptible to the interpretation sought by the Commonwealth on the one hand and by the executor on the other hand. However, Section 3 provides, we repeat, that with respect to bequests to take effect after a life estate (or an estate for years) the tax on such estate shall not be payable or demandable "until the person liable for the same shall come into actual possession of such estate [and] the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession." There is not the slightest doubt that, contrary to the contention of the Commonwealth, a tax is not demandable by the Commonwealth, nor can it compel a remainderman to pay inheritance tax on his future remainder interest *at or as of testator's death.* The tax is payable *at the election,* not of the Commonwealth but, *of the owner* when he comes into actual possession or at his election "at any time prior to his coming into possession." The Act further provides that "In such cases the tax shall be assessed on the value of the estate [not as of death but] at the time of the payment of the tax, after deducting the value of the life-estate or estates for years. . . ." Reading and construing these two sections

together it is clear that there is no merit in the Commonwealth's contention. We agree with the appellee that Section 2, when construed in conjunction with Section 3, refers to a tax on present interests as distinguished from a tax on present and/or future interests. If the Commonwealth's contention were sound it would sometimes result that the owner of a remainder testamentary interest would not only receive nothing from the testator but would owe the Commonwealth, Pennsylvania Inheritance taxes. For example, if the value of the securities or assets in the trust substantially depreciated from the date of death to the date when the right of possession accrued (or payment was made by the remainderman if the tax is prepaid years after testator's death but prior to possession) and in computing the *clear value of the remainder interest* as of date of payment with the Federal Estate taxes and the Pennsylvania Inheritance taxes (which had been paid years before) added on to the value of the remainder interest at date of payment, the tax on such remainder interest might easily exceed the market value of the then remaining assets.

The contention of the Commonwealth that the remainder interest is claiming the Federal Estate taxes as a deduction—whereas in reality the Commonwealth is trying to resurrect the Federal Estate tax by adding it back to the value of the future interest at time of payment—was met and ably answered by Judge LEFEVER in *Oberdorfer Estate,* 20 Pa. D. & C. 2d 719. In that case, Judge LEFEVER aptly said: "deductions are normally allowable at decedent's death, not at the time a remainder falls in, when the question is the value of what remains. . . . [page 728]

"The argument that in this case we are concerned with 'deductions' . . . is without merit. The Commonwealth attempts to add something to the value of the estate being taxed. The taxpayer does not claim a deduction."

The Commonwealth places great reliance on the fact that in Section 3 a tax is assessed upon the value of the *estate* at the time the right of possession accrues to the owner and the definition of the word "estate" in Section 45. We find no merit in this contention. When considered with all the language of that section and the purpose and objective of the Act, the words "value of the estate" in Section 3 clearly and undoubtedly refer to the value of the owner's *interest* at the time the right of possession accrues to the owner or at his election at the time of prepayment of the tax. In *Shugars v. Chamberlain Amusements Enterprises, Inc.*, 284 Pa. 200, supra, the Court said (page 205) : "When the Commonwealth adopted an enlarged policy of taxation in 1917, a new class of property or rights was subjected to governmental burdens. Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession [to] or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws."

See to the same effect: *Wright Estate,* 391 Pa. 405, 138 A. 2d 102; *Coxe's Estate,* 181 Pa. 369, 37 A. 517; *Van Beil's Estate,* 257 Pa. 155, 101 A. 316; *Knight's Estate,* 261 Pa. 537, 104 A. 765.

On the other hand, it is well settled that the Federal Estate tax is not a legacy tax or a succession tax on the privilege of receiving the property possessed by a decedent; instead it is a tax on the privilege of transmission of decedent's property (i.e., the statutory net estate of the decedent), which is payable out of the estate as a whole: *Riggs v. Del Drago,* 317 U.S. 95; *Helvering v. St. Louis Trust Co.,* 296 U.S. 39; *Chase National Bank v. United States,* 278 U.S. 327; *Commissioner v. Clise,* 122 F. 2d 998; *Wright Estate,* 391 Pa., supra.

In *Commissioner v. Clise*, 122 F. 2d, supra, the Circuit Court succinctly said (page 1001) : "The Federal Estate Tax is levied upon the privilege of transmission of property at death. Saltonstall v. Saltonstall, 276 U.S. 260, 270, 48 S. Ct. 225, 72 L. Ed. 565. It is 'death duties,' as distinguished from a legacy or succession tax. It does not tax the interest to which the legatees and devisees succeed on death, but the interest which ceased by reason of death; what is imposed is an excise upon the transfer of an estate upon death of the owner. Nichols v. Coolidge, 274 U.S. 531, 537, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A.L.R. 1081; Young Men's Christian Ass'n v. Davis, 264 U.S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Edwards v. Slocum, 264 U.S. 61, 62, 44 S. Ct. 293, 68 L. Ed. 564; Knowlton v. Moore, 178 U.S. 41, 47, 49, 20 S. Ct. 747, 44 L. Ed. 969. . . ."

In *Reynolds Estate*, 359 Pa. 616, 60 A. 2d 57, the Court said (page 621) : "While the value of [a] life estate is fixed commencing with the date of the death of testator: Rowell's Estate [315 Pa. 181, 173 A. 634] the value of remainders is determined as of the time the right of possession accrues, i.e., at the death of the life tenant: Jewell's Estate, 235 Pa. 119, 83 A. 610; Simpson's Estate, 332 Pa. 115, 2 A. 2d 851, unless the tax on the entire estate is paid under section 3 of the Act of 1919. . . ."

Similarly, in *Simpson's Estate*, 332 Pa. 115, 2 A. 2d 851, the Court said (page 117) : "Section 3 of the act provided that 'the tax . . . shall not be payable . . . until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner as aforesaid.' The party entitled to the subsequent interest is given a choice, however, 'to pay the tax at any time prior to his coming into possession, and, in such

cases, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years.' "
Accord: *Heberton's Estate,* 51 Pa. D. & C. 285, 295.

A similar contention was made by the Commonwealth and rejected by this Court in *Loeb Estate,* 400 Pa. 368, 162 A. 2d 207. In that case, the Commonwealth contended that the payment of Pennsylvania Inheritance tax by the residuary estate constituted an additional legacy to the legatee who received a tax-free pecuniary legacy. This Court quoted with approval (page 372) Judge TAXIS of the Orphans' Court of Montgomery County: "Plainly, what actually passes to the beneficiary, is what he actually receives after the tax has been paid. From this it follows that the dollars used to pay the tax are not part of the clear value of the property passing to the beneficiary. . . ."

Furthermore, if there were any reasonable doubt in this case as to the proper construction of the Act of 1919, and we think none exists, all doubts should be resolved in favor of the taxpayer and most strongly against the taxing authorities: *Price v. Tax Review Board,* 409 Pa. 479, 187 A. 2d 280; *Tax Review Board v. Green,* 409 Pa. 448, 187 A. 2d 572; *Equitable Gas Co. v. Pittsburgh School District,* 404 Pa. 321, 172 A. 2d 156; *Loeb Estate,* supra; *Paper Products Company v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253.

Moreover, while the Legislature repeatedly amended the Act of 1919 after its enactment, it never changed Section 3 or any part thereof until 1961 (see infra). On the contrary, when in 1951 the Department of Revenue sponsored House Bill H-1361 to amend Section 3 of the Inheritance Tax Act of 1919 so that its language would compel the construction for which the Commonwealth now contends, the bill failed of enactment. Even more significantly, in the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, the Legislature spe-

cifically rejected the present contention of the Commonwealth by providing for deductions in Section 651 (72 P.S. §2485-651):

"E. Future Interests—Costs and Taxes—Deductible

"Section 651. Costs; Taxes.—All reasonable expenses of administration, incurred after assessment of the inheritance tax on prior interests, and all death taxes paid out of property supporting such prior interests, *shall not be included* in the appraisement in determining the value of a future interest on the valuation date. This section shall not apply when the tax is paid under the provisions of sections 713(a) and 714(a)."

Section 713(a) provides: "Section 713. Payment Date; Future Interest; Year of Decedent's Death; Contingencies.—(a) Payment Within Year of Decedent's Death. At any time within one (1) year after the decedent's death, the personal representative or any party in interest may elect, by a writing filed with the register, to have the value of a future interest determined as of the date of decedent's death and to pay the tax assessed thereon. Such tax shall become delinquent at the expiration of one (1) year after the decedent's death. If the future interest is accelerated within the year of decedent's death because of the occurrence of an event described in section 505, the value of the future interest shall be determined by making an adjustment for the value of any prior interest causing such acceleration, computed as provided in section 505."

Section 714(a) provides: "Section 714. Payment Date; Future Interest; Payment After Year from Decedent's Death; Contingencies. (a) Payment After Year from Decedent's Death. At any time after one (1) year from the decedent's death, and prior to the vesting of a future interest in possession and enjoyment a fiduciary, or any party in interest, may elect,

by a writing filed with the register, to have the value of a future interest determined as of the date of the filing of such election and to pay the tax assessed thereon. Such tax shall become delinquent at the expiration of three (3) months from the filing of the election."

Thus the Legislature deliberately changed the law so as to give effect to the Commonwealth's present contention in cases when the tax was paid within a year of testator's death, but *preserved the law* as set forth in *Oberdorfer Estate,* supra, when the tax on a remainder is paid after a year or at the conclusion of a life estate. See Grossman & Smith, Pennsylvania Inheritance and Estate Tax, pages 333 and 334.

We may also consider the uniform construction of the Act of 1919 adopted by the Department of Revenue (through the Inheritance Tax Division) and followed from 1919 to the end of 1954—indeed it was followed since the Act of 1887, P. L. 79, §3 whereof was substantially reenacted in and by §3 of the Act of 1919. The Department's construction prior to 1954 of §3 of the Act of 1919 and §3 of the Act of 1887, as amended, was exactly the construction contended for by this taxpayer and adopted in this case by the Orphans' Court. We pertinently said in *Loeb Estate,* 400 Pa., supra, (page 373) : "Where the language of a statute is plain and clear, administrative interpretation and practice cannot change or avoid the statute. Where, however, the words of a statute are not clear or explicit, the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed,* is entitled to

---

* The *uniform* interpretation, construction and practice which had been adopted and followed by the Commonwealth from 1887 to 1954, was suddenly changed in the latter part of 1954 by a new Deputy Attorney General who ingeniously conceived the Commonwealth's present position and contention with regard to the taxation of gifts of future or remainder interests.

great weight and should not be disregarded or overturned, except for clear language in the act itself or very strong, cogent and convincing reasons [citing cases].

. . .

"The original Transfer Inheritance Tax Act of 1919 has been amended numerous times and the legislature has never amended the method of computing the tax which the Courts have followed for 39 years. There is therefore a presumption that such an interpretation by the Courts is in accordance with the intent of the legislature; otherwise it would have changed it in one of its amendments: DuPuy Estate, 373 Pa. 423, 96 A. 2d 318; Mills Estate, 367 Pa. 504, 80 A. 2d 809; Salvation Army Case, 349 Pa. 105, 36 A. 2d 479; Commonwealth v. Beamish, 20 Pa. D. & C. 324. . . ." (pages 375-376) See also pages 369 and 374.

The language of the testator's will did not alter the time or the method or the formula for computing this tax.

We have considered all the contentions of the Commonwealth but find them lacking in merit and deem further discussion unnecessary.

The Order of the lower Court is affirmed at the cost of the Commonwealth.

———

Dissenting Opinion by Mr. Justice Cohen:

Under the Act of June 20, 1919, P. L. 521, as amended, 72 P.S. §2302, it is provided that "[a]ll taxes imposed by this act shall be imposed upon the clear value of the property subject to the tax . . . passing to . . . [collaterals]. *In ascertaining the clear value of such estates . . . no deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States or to any other*

*State or Territory. . . ."* (Emphasis supplied). This provision is such a clear and unambiguous expression of the legislative intent of preventing the payment of federal estate taxes from reducing the amount of inheritance taxes running to the Commonwealth that reference to prior administrative practice is unnecessary, and indeed, highly improper. Here, as in *Loeb Estate,* 400 Pa. 368, 162 A. 2d 207 (1960), the majority has taken an ill-considered "prior administrative practice" as a substitute for an explicit legislative mandate.

Administrative interpretation should not be resorted to when the provisions of the statute are clear, as they are in this Act. By our decision in this matter we have opened the door to tax avoidance primarily for the benefit of the beneficiaries of large estates. If this preference is to be permitted in instances such as this, the legislature should undoubtedly extend the deduction of federal estate tax to all estates.

I dissent.