## McCahan Estate

Before Klein, A. J., Saylor, Shoyer, Pawelec & Silverstein, JJ.

KLEIN, A. J., April 6, 1973.—This is an appeal from the assessment of inheritance tax.

James M. McCahan died October 25, 1924, leaving a will wherein, after making disposition of his residence, 1607 South Broad Street, Philadelphia, Pa., and his personal effects to his wife, Elizabeth H. McCahan, and his daughter, Anna R. McCahan (Illman) under terms not necessary here to recite, he bequeathed $25,000 to his wife, $10,000 to his daughter, $1,000 each to nine nephews and nieces, $1,000 each to certain designated employes of W. J. McCahan Sugar Refining Company, and an annuity of $200 to Richard S. Pomeroy of Ridley Park, Pa. Under Article Tenth of his will, he gave the residue of his estate to Girard Trust Company of Philadelphia (now Girard Trust Bank) in trust to pay 60 percent of the income to his wife for life and the remaining 40 percent to his daughter for her life. He provided further that upon the widow's death, the daughter's share was to be increased to 50 percent and the trustees were to distribute the corpus or principal of the remaining 50 percent among eight nieces and nephews of testator

and five nieces and nephews of the widow, or their respective issue by representation.

On January 23, 1925, an appraisement for transfer inheritance tax purposes was filed (to save the discount of five percent for payment within three months from date of death) on the amounts passing to lineals and collaterals as specific legacies. In a letter dated January 23, 1925, to William F. Campbell, who was Register of Wills at the time, W. H. Loesche, Assistant Trust Officer of the Girard Trust Company, executor, enclosed a check for $1,900 and said: "The major tax due in the above estate will be on the value of the life estates in the residuary estate and *then later upon the collateral remainder interests.*" (Italics supplied.)

On November 13, 1925, a supplemental appraisement was filed in which the appraiser stated: "Being unable to arrive at the net value of this Estate and in order to avoid penalty the Executors desire to pay the Inheritance tax on account of personal estate to wit, on life estate of Widow Elizabeth H. McCahan aged 56 yrs. in 60% of Residuary Estate and the life estate of daughter, Anna R. McCahan aged 44 years calculated on the expectancy of the widow in 40% of Residue of Estate subject to further accounting." On the same day another supplemental appraisement was filed covering two irredeemable ground rents. Tax was again calculated on the basis of the life estates of the widow and daughter and the appraiser noted: "Former appraisement filed 1/23/1925 subject to further accounting."

On February 1, 1926, another supplemental appraisement was made at the request of the executor in which the appraiser stated: "Being unable to arrive at the net value of this estate, the Executors desire to pay on account of life estate of Widow and Daughter, in the sum of $750,000.00. Tax 2% $15,000.00."

The next and truly crucial appraisement was made on July 16, 1926, following the adjudication of the executor's account. In this appraisement the net taxable estate was shown as $2,868,382.91 and tax was assessed as follows:

"Life estate of Elizabeth T. McCahan in 60% of above balance age 56 years ($1,721,029.75) valued at           791,071.35
        "Tax 2%      15,821.43

"Life estate of Anna McC. Illman in 40% of above balance age 44 years ($1,147,353.16) valued at         645,845.12
        "Tax 2%  12,916.90"

Elizabeth H. McCahan, the widow, died December 9, 1928, whereupon the share upon which Anna Illman was receiving income was increased from 40 percent to 50 percent and the remaining 50 percent of the principal became distributable to the nieces and nephews of testator and his wife and their issue. By appraisement dated July 9, 1929, the net taxable estate was fixed at $2,599,961.99, and a tax of 10 percent on $1,299,980.99, in the amount of $129,998.10, was assessed on the half awarded to the collateral heirs. The appraisement then states:

"½ awarded to daughter for life on which tax has been paid on ⅘—⅕ equals $259,996.20 valued at
                             $138,005.98
       "Tax 2%  $2,760.12"

Another appraisement was filed on July 23, 1929, with respect to an amount set aside to make provision for payment of Federal income and inheritance taxes. In this appraisement we find the following notation:

"life estate of Anna R. Illman, daughter, in ⅕ of above amount $4,925.00 age 48 yrs., valued at

$2,614.19

"Tax 2%        52.28"

Another appraisement was filed on December 7, 1931, in which the life estate of Anna Illman was taxed as of age 51 years at two percent, amounting to $73.18.

Anna McCahan Illman, testator's daughter and the final life tenant, died October 13, 1968, without issue. On July 16, 1971, a remainder appraisement was filed valuing the net personal estate at $2,087,192.64, and assessing a tax on the remainder interest at 10 percent, the rate applicable to collateral heirs at the date of testator's death, in the amount of $208,719.26.

Girard Trust Bank, the trustee, has appealed from the assessment of this tax on the remainder interest. It contends that the failure of the Commonwealth to specifically reserve in their various appraisements the right to reappraise the assets and to impose additional inheritance tax conclusively bars it from assessing any tax at this time. In the opinion of the hearing judge this contention is wholly without merit.

In approaching the question before us for decision, it would be helpful to examine the background of taxation on remainder interests in this State. Grossman and Smith, in their authoritative Pennsylvania Inheritance and Estate Tax, review this subject, Article V, pages 32, 33, 1971 Revision:

"§506-1. Prior law. 1826 P. L. 227 and 1849 P. L. 570 imposed an immediate tax on remainders, which were valued at the time of the testator's death . . . 1850 P. L. 170 permitted the remainderman to elect to pay tax when he came into actual possession, provided that proper security was given. 1855 P. L. 425, 1887 P. L. 79, 1917 P. L. 832 and 1919 P. L. 521 all enlarged

the remainderman's privilege to allow an election to pay tax at any time prior to his coming into actual possession, providing that the valuation date was to be the date of payment (with deduction of the value of then-existing preceding estates); the latter three acts also expressly provided that where remainder tax was not paid until the remainderman came into possession (i. e., the date of the life tenant's death . . .), the valuation would be as of that date without deduction for prior estates . . . The clear value of the corpus was taxable but not accumulated or reinvested income . . . Thus, a remainder was valued at the time when payment could be demanded by the Commonwealth under the law in effect at the testator's death (or under later retroactive statutes— e.g., the Acts of 1850, 1855 and 1887; see Jewell Est., 235 Pa. 119 (1912)), or at the time the remainderman elected to prepay the tax."

The Act of June 20, 1919, P. L. 521, repealed June 13, 1961, P. L. 373, which is a substantial reenactment of the Act of May 6, 1887, P. L. 79, was in effect when James M. McCahan died in 1924. Section 3 of the act provides:

"Where there is a transfer of property by . . . bequest . . . liable to the tax hereinbefore imposed, which . . . bequest . . . is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner,* but the owner may pay the tax at any time

prior to his coming into possession. In such cases *the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value. of the life-estate or estates for years.*" (Italics supplied.)

In our opinion, the question of the taxability of the remainder interests is controlled by Carver Estate, 422 Pa. 609 (1966). In 1906, J. Henry Carver placed the sum of $40,000 in trust, reserving an income interest for himself for life, and thereafter for his wife for life or until she remarried. Upon her death or remarriage, the corpus was to go to decedent's surviving children or, in default thereof, as he might appoint by will. He died in 1919, without issue, leaving a will in which he directed that the principal of the trust be paid to eight named beneficiaries. On the basis of the inventory filed with the register of wills, the estate was appraised and a tax assessed at the appropriate rate. However, the appraisal did not include the remainder interests under the trust over which the decedent had retained and exercised a power of appointment. Consequently, no inheritance tax was assessed or paid on those interests.

Decedent's wife died in 1963, not having remarried. The remainder interests were appraised and a tax was assessed at the applicable rate. An appeal was filed from the appraisement and assessment by the trustees. Appellants contended that since there was no evidence of fraud, accident or mistake, the failure of the Commonwealth to include the trust corpus in its original appraisement, and *its failure to reserve* the trust corpus for future valuation precluded the appraisement being appealed. President Judge Van Roden, of the Orphans' Court of Delaware County, rejected this contention, holding that under the Act of June 20, 1919,

the appropriate time to appraise an interest postponed in possession or enjoyment until the expiration of a life estate or estate for years is either at the time the remainderman exercises his statutory option to prepay the tax or, absent such election, at the time the remainderman comes into actual possession or enjoyment. The Supreme Court held that Judge Van Roden had correctly interpreted the act. Mr. Justice Roberts, speaking for a unanimous court said, at page 613:

"As a reading of this section of the Act makes clear, the inheritance tax imposed upon future interests is to be based upon the value of those interests at the time the ultimate owner either prepays the tax or actually comes into possession or enjoyment of the property. *Thus, an appraisal of the value of such interests at any other time would constitute a meaningless act.* Even if the Commonwealth had appraised the remainder interests under the 1906 deed of trust at the time of decedent's demise, as appellants contend it was required to do, a second appraisement would now be required in order to comply with the statutory direction that the tax be assessed 'upon the value of the estate at the time the right of possession accrues to the owner.' Act of June 20, 1919, P. L. 521, §3, 72 P.S. §2304. In the instant case, the right of possession did not accrue until the expiration of the interest of decedent's wife in 1963. It was, therefore, not until that time that an appraisal of any legal significance could have been made by the Commonwealth. *We are unable to adopt a construction of the Act of 1919 which would place upon the Commonwealth the duty to engage in an appraisement of future interests which would be binding upon neither itself nor the ultimate owner of the interest appraised.* Pickering Estate, 410 Pa. 638, 190 A. 2d 132 (1963)." (Italics supplied.)

Counsel for appellant tries to distinguish Carver from the instant case by making much of the fact that in Carver the taxpayer failed to include the $40,000 trust in his inventory. Although the opinion of the court below discussed this point in great detail, the Supreme Court clearly did not think it was important, since its opinion did not stress it in any manner. See Fiduciary Review, November, 1966.

The rule of Carver is clear: unless the remainderman exercised his statutory option to prepay the tax, the Commonwealth, when filing an appraisement for taxes which are due, is under no duty to make an appraisement for taxes that are clearly not due. It follows that the Commonwealth is also under no duty to then appraise remainder interests, or to specifically reserve the right to assess a tax on such interests. This duty does not arise until the remainderman comes into actual possession or enjoyment of his share of the estate.

The thrust of appellant's argument in the present case is that by reason of the Commonwealth's failure to specifically reserve the right to appraise the remainder interests when the previous appraisements were filed, it is conclusively precluded from now taxing the remainder interests. We do not think there is any particular magic in the words "reserve" or "reservation." They are not sanctified as cabalistic "abracadabra," nor have they been mandated in any manner by the legislature. In our opinion, it is far more significant in these cases to determine whether under all of the attendant circumstances we can reasonably conclude that the Commonwealth intended the appraisement to be final and conclusive.

See Reynolds Estate, 359 Pa. 616 (1948), where the court stressed, at page 620, that:

"When an appraisement and assessment purport to be a final determination of the value of the *property appraised* and the *rate assessable*, the assessment and appraisement are conclusive." (Emphasis in the original.)

In the present case, there can be no doubt that none of the long series of appraisements was intended to be a final one. The Commonwealth carefully spelled out in detail that the appraisements were on the life estates of the widow and daughter and not on the remainder interests. This is confirmed by the 1925 letter from Girard Trust Bank in which Mr. Loesche specifically states that the major tax will be "later upon the collateral remainder interests."

It is evident that Girard did not regard the previous appraisements as being final and conclusive because they did not raise this defense to the imposition of additional tax when the widow died. At that point in time it paid the tax on the distributable remainder interests without objection.

Mr. Justice Roberts in Carver effectively disposed of the applicability of most of the cases relied on by appellant. He said, at page 614:

"Appellants, however, rely upon Reynolds Estate, 359 Pa. 616, 60 A. 2d 57 (1948); Darsie Estate, 354 Pa. 540, 47 A. 2d 815 (1946); Heberton Estate, 351 Pa. 564, 41 A. 2d 654 (1945); Ernst's Estate, 317 Pa. 367, 177 Atl. 19 (1935); and Rowell's Estate, 315 Pa. 181, 173 Atl. 634 (1934), as supporting their construction of the Act of 1919. We do not agree. Despite the presence of dictum in those cases, none decided the issue presently before us."

Appellant lays great stress on Altemus Estate, 44 D. & C. 2d 499 (1968), decided by this court after Carver. In our opinion, Altemus is inapposite and

readily distinguishable. Altemus died in 1912, leaving a portion of his residuary estate in trust to pay the net income to a granddaughter for life and upon her death to pay the principal to her issue and, in default of issue, as she would appoint by will. In 1912, the Commonwealth filed two inheritance tax appraisements, the first on certain legacies and the second on a small annuity. Neither appraisement reserved the right to make further appraisements. This court held that the two appraisements, taken as a whole, appear to have been intended as a *final* appraisement. The appraiser did not value or assess a tax on assets passing into the trust for the granddaughter, because he apparently assumed that no tax was then due or could thereafter become due in view of the fact that the life tenant and primary remaindermen were lineals, and that when Altemus died, no inheritance tax was payable on property passing to lineal descendants. Because the two appraisements were intended as final, it was held that the fact that the life tenant died without issue and exercised her power of appointment in favor of designated charities, did not give the Commonwealth the right to impose the additional taxes it claimed.

The hearing judge went to great pains to distinguish the facts in Altemus from those in Carver. He concluded that the factual differences were significant, that Carver dealt with a different statute, and that because Carver represented a significant departure from prior case law it should be limited to its facts. The court en banc likewise concluded that the facts in Altemus were vitally different from those in Carver and dismissed the exceptions of the Commonwealth. The Commonwealth did not take an appeal and we can only speculate as to what the Supreme Court decision might have been. It is clear, however, that

the basic rationale of Altemus is that the Commonwealth *intended* the initial appraisements to be final and was consequently bound by them.

This is obviously different from the factual situation in the instant case in which it is evident that none of the previous appraisements filed prior to the daughter's death was intended to be final and conclusive.

In Blake Estate, 23 Fiduc. Rep. 19 (1972) (O.C. Div. Montg.), President Judge Taxis held that the Commonwealth sufficiently reserved the right to tax a charitable remainder upon the death of the income beneficiary, even though a specific right to reappraise was not reserved in the original appraisement. President Judge Taxis said, at page 22:

"The Fidelity Bank strenuously urges that the Commonwealth's failure to reserve a specific right to reappraise now prevents such action. It is true that it now appears to be a uniform practice, where subsequent appraisements will be required, for the Commonwealth specifically to reserve the right to do so. This undoubtedly is the best practice and should effectively prevent controversies such as the present one."

Judge Taxis continues, at pages 23 and 24:

"The reservation of a specific right to reassess is one way to show that an assessment is not final, but nothing in the cases requires us to hold that it is the only way. . . . [A]s long as the initial assessment clearly shows that it is not final, there can be no objection to a subsequent reassessment."

Nothing is to be gained by a tortured analysis of the many cases involving the Commonwealth's right to make a later appraisement of remainder interests. Suffice it to say that, in our opinion, we are bound by the rule of Carver Estate, supra, except where it is clear

that the Commonwealth intended an appraisement to be final and conclusive and thus be bound by it.

Accordingly, we enter the following

## DECREE

And now, April 6, 1973, the appeal of Girard Trust Bank from the appraisement and assessment of additional inheritance tax dated July 16, 1971, is dismissed.

*Frank J. Eustace, Jr.,* for appellant.

*Catherine G. Barone,* Assistant Attorney General, for Commonwealth.

*John T. Kehner,* for May M. White and The Fidelity Bank.

*William M. Keenan,* for Jeremy Ogilvie Sweeten and Margot Anne Sweeten.

## OPINION SUR EXCEPTIONS

SAYLOR, J., June 27, 1973.—The question concerning the need of the Commonwealth of Pennsylvania to reserve the right to reappraise or reassess subsequent to the original appraisal and assessment of the assets of a trust estate subject to transfer inheritance tax was answered by this court in the opinions of Shoyer, J., for the court en banc in Fox Estate, 62 D. & C. 2d 514, and Hay Estate, 63 D. & C. 2d 19, delivered in the past month. The decision of Klein, A.J., in the instant case is in harmony with those opinions and follows the precedent established by the Supreme Court in Carver Estate, 422 Pa. 609 (1966).

The substance of these decisions is that the Commonwealth in appraising and assessing trust estate assets and collecting a tax on the value of a life

tenant's interest therein is under no obligation to reserve the right to reappraise and reassess a tax on the remainder interest at a later date. In the instant case, the remainder was not appraised and no tax thereon was assessed when the life estates were appraised and assessed. The earlier appraisals show on their face that they were not intended to be final and that they were not appraisals of the remainder interest. Here, there is no second appraisal and no reappraisal involved, no effort by the State to correct an error, nor to make a second guess, nor to revise the judgment of the taxing authorities.

The Act of June 20, 1919, P. L. 521, repealed June 15, 1961, P. L. 373, provides that the time for the assessment of the tax on the remainder is the time when the trust terminates and those owning remainder interests come into possession thereof and the then value of the remainder can be determined. All this presupposes that the taxpayer has not offered to pay the tax on the life estates and remainders initially as he has the right to do.

Failing such action by the taxpayer, the State has no right to assess a tax on the remainder interest. Hence, it has no duty to reserve the right to tax that interest at a later date. The State need not reserve a right it does not possess at the time of the reservation.

The very fact that the tax appraisals in this case indicate that the taxpayer elected to pay a tax on the life estate alone is conclusive evidence (1) that the tax on the remainder was not assessed and (2) that there existed a remainder interest the appraisal whereof and the assessment of tax thereon were necessarily postponed to the time when that interest ripened into the remainderman's right to possession of the trust res by the termination of the life estate.

For the Commonwealth to have reserved the right

to appraise the trust principal at a future date and to tax the remainder interest therein would have been a vain thing.

The exceptions of the trustees are dismissed.