**Hay Estate**

Before Klein, A. J., Bolger, Saylor, Shoyer, Pawelec and Silverstein, JJ.

*Catherine R. Barone,* *Michael von Moschzisker* and *Israel Packel,* for exceptants.

*Martin J. Levitas* and *J. Peter Williams,* contra.

SHOYER, J., June 18, 1973.—

## ADJUDICATION SUR EXCEPTIONS

Where executors have paid collateral inheritance tax on the original life estates of six nieces created in a fund of $180,000 and thereafter the corporate trustee has paid taxes contemporaneously on successive life estates until the death of the last surviving niece, which terminates the trust, is the Commonwealth then estopped from reappraising the clear value of the remainder and assessing collateral inheritance tax thereon? From the opinion and decree of the hearing judge sustaining the appeal of the trustee, the Commonwealth has filed the present exceptions.

James Hay died testate on December 29, 1915. His will disposed of many large pecuniary legacies and created a trust in a fund of $180,000 (article 9th), the income of which was to be divided equally among six named nieces until the death of the last surviving niece. As each niece died, her share of the income was to go to her issue or, in the absence of issue, to the surviving nieces. Upon the death of the niece last dying, testator directed that the principal of the trust fund should be divided per stirpes among the then living descendants of the said nieces. All of the above gifts were subject to the collateral inheritance tax imposed by the Act of May 6, 1887, P. L. 79.

On March 27, 1916, the executors paid collateral inheritance tax on $13,858.18 to the Commonwealth on all the pecuniary legacies in accordance with the original appraisement by the Commonwealth dated March 16, 1916. On January 10, 1917, the executors paid additional inheritance tax of $6,080.01 to the Commonwealth on the following interests: Life estate of Charles Hay in a $25,000 trust created under article 6 of decedent's will; an annuity of £100 to one Jane Hay; six equal life estates of the nieces in the income of the $180,000 trust created under article 9 of decedent's will.

On October 14, 1927, executors paid additional collateral inheritance tax in the amount of $1,225.20 to the Commonwealth on the termination of the life estate of Charles Hay. The assets of the $25,000 trust were reappraised as of June 18, 1927 (date of the life tenant's death), and the valuation of the remainder interest was reappraised at $24,506.07. Tax on said remainder principal was imposed at five percent, amounting to $1,225.20.

On February 11, 1939, the Girard Trust Company, trustee and co-executor, paid additional collateral inheritance tax in the amount of $599.36 to the Commonwealth following the death of Frances Simms, the first of the six nieces to die.

On April 14, 1938, Frances Simms' one-sixth share of the income under article 9 of the trust on her death passed to the remaining five nieces equally. The assets in article 9 trust were reappraised by the Commonwealth as of April 14, 1938, date of death of Frances Simms, at $156,276.15. Tax at five percent rate was imposed on the valuation of the succeeding life estates in Frances's one-sixth share of income during the life of the five surviving nieces.

Following the deaths of each of the next four nieces to die, the interest of the surviving nieces or other income beneficiaries in the share of each deceased niece was reappraised and tax duly paid thereon. The appraisements upon the death of Mary J. Moore on May 9, 1957, of Mary Hay Johnson on April 27, 1965, and of Margaret S. Sharinghausen on December 9, 1965, were all rubber stamped, "This is not a final appraisement as to the residuary estate of the decedent." The trust terminated upon the death of Mary Simms, the last surviving niece of decedent on June 21, 1968. On May 22, 1970, the Commonwealth filed a collateral remainder appraisement wherein it reappraised the article 9 trust assets as of June 21, 1968, the date of death of Mary Simms, at $222,477.02, and after allowing deductions of $2,500 assessed tax on a net estate of $219,977.02, constituting the remainder passing to collateral heirs at five percent, or a tax of $10,998.85, plus interest from the date of distribution.

Sections 3 and 12 of the Act of 1887, which pertain to the issue in this appeal, read as follows:

"Section 3. In all cases where there has been or shall be a devise, descent or bequest to collateral relatives or strangers, liable to the collateral inheritance tax, to take effect in possession, or come into actual enjoyment after the expiration of one or more life estates, or a period of years, the tax on such estate shall not be payable, nor interest begin to run thereon, until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner as aforesaid: Provided, That the owner shall have the right to pay the tax at any time prior to his coming into possession,

and, in such cases, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years: And provided further, That the tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid. And the owner of any personal estate shall make a full return of the same to the register of wills of the proper county within one year from the death of the decedent, and within that time enter into security for the payment of the tax to the satisfaction of such register; and in case of failure so to do, the tax shall be immediately payable and collectible.

". . .

"Section 12. It shall be the duty of the register of wills of the county, in which letters testamentary or of administration are granted, to appoint an appraiser, as often as and whenever occasion may require, to fix the valuation of estates, which are or shall be subject to collateral inheritance tax; and it shall be the duty of such appraiser to make a fair and conscionable appraisement of such estates; and it shall further be the duty of such appraiser to assess and fix the cash value of all annuities and life estates growing out of said estates, upon which annuities and life estates the collateral inheritance tax shall be immediately payable out of the estate at the rate of such valuation: Provided, That any person or persons, not satisfied with said appraisement, shall have the right to appeal, within thirty days, to the orphans' court of the proper county or city on paying or giving security to pay all costs, together with whatever tax shall be fixed by said court; and, upon such appeal, said courts shall have jurisdiction to determine all questions of valuation and of the liability of the appraised estate for such tax, sub-

ject to the right of appeal to the Supreme Court as in other cases."

The aforementioned appraisement of January 9, 1917, listed the life estates of Charles Hay and the six nieces, together with the annuity of £100 sterling to Jane Hay, as follows:

Life estate of Charles Hay, aged 70 years
in $25,000—valued at                                $ 7,528.75

Life estate of Mary Moore, aged 34 years
in $30,000—valued at                                  18,934.50

Life estate of Mary Simms, aged 35 years
in $30,000—valued at                                  18,753.00

Life estate of Frances R. Simms, aged 36
years, in $30,000—valued at                          18,565.50

Life estate of Margaret S. Sharinghausen
(mentioned in will as Margaret Simms),
aged 29 years in $30,000—valued at                   19,765.50

Life estate of Margaret Hay Johnson
(mentioned in will as Margaret Hay), aged
30 years in $30,000—valued at                        19,608.00

Life estate of Bertha Hay Yocum (mentioned in will as Bertha Hay), aged 39
years in $30,000—valued at                           17,968.50

Annuity of £100 sterling per annum to
Jane Hay, who died December 17, 1916.
Account paid this annuitant                              476.50

The learned hearing judge refused to follow Carver Estate, 422 Pa. 609 (1966), which was cited to him by the Commonwealth. He held instead that "[t]he present case is identical to that of Altemus Estate, 44 D. & C. 2d, 499, wherein this court dismissed the Commonwealth's exceptions to a decree sustaining a trustee's appeal from appraisement where the Commonwealth did not reserve the right to reappraise the

remainder interest and where, as here, full and complete disclosure was made to the tax appraiser at the time of the original appraisement."

In Reynold's Estate, 359 Pa. 616 (1948), our Supreme Court first approved an express reservation made by the Commonwealth of its right to appropriately tax future interests upon the expiration of the life estate. David M. Reynolds, testator, died March 17, 1944. The tax statute involved was the Act of June 20, 1919, P. L. 521, which repealed and supplied the Act of May 6, 1887, P. L. 79. Section 3 of the 1919 statute does not vary significantly in either words or meaning from section 3 of the Act of 1887 quoted above. Mrs. Reynolds was given a life estate in the residue with power to consume. The remainder, if any, to collateral relatives. The original appraisement appraised certain specific legacies at 10 percent and the entire residue of the estate, which was to support the life estate, was appraised at two percent. Tax was paid on this amount. The register of wills made no effort to appraise the value of the widow's life estate as such, but did write an express reservation notice as to the remainder on his appraisement. Upon the death of the life tenant, the register made a reappraisement and assessment wherein he appraised the value of the life estate at two percent and then appraised the remainder at 10 percent. During her lifetime, the widow had consumed none of the principal and the remainder at her death was actually larger than when the trust was set up.

Our Supreme Court held that by reason of the reservation the reappraisement was proper and said, at page 620:

"When an appraisement and assessment *purport*\* to be a final determination of the value of the *property appraised*\*\* and the *rate assessable*,\*\* the assessment

and appraisement are conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment had been made either as to the *value*** of an asset or the *rate*** of tax." (*Italics supplied.) (**Italics in original.)

It is to be observed that in Reynolds the original appraisement was of the entire residue at two percent and the express reservation made on the appraisement by the register of wills was absolutely necessary in order to protect the right of the Commonwealth to reappraise the remainder when for the first time tax on that remainder became *demandable* by the Commonwealth.

Carver Estate, supra, where there was no express reservation, cannot be explained away by reasoning that the tax there allowed on the trust remainder was an original and not a supplemental appraisement. The taxpayer in Carver vigorously contended that the register of wills had been fully notified of the existence of the inter vivos trust when the tax on the testamentary assets was assessed and paid. That disputed contention was not determined in the court below, but both there and in the Supreme Court, the decision was placed squarely on the right of the remainderman to delay payment until he "shall come into actual possession of such estate by the termination of the estates for life or years." Then, and then only, *must* the Commonwealth assess the value of the remainder because, following Pickering Estate, 410 Pa. 638, 643 (1963), the tax is not previously "demandable by the Government." Our Supreme Court ruled emphatically in Carver Estate, page 613, that "an appraisal of the value of such interests at any other time would constitute a meaningless act. It was, therefore, not until that time that an appraisal of any legal significance could have been made by the Commonwealth." When the legis-

lature, in relief of the holders of future interests (see Heberton Estate, 351 Pa. 564, 568 (1945)), postponed collectibility of the tax until "termination of the estates for life or years," it likewise postponed determination of the taxability of the transfer, subject, of course, to an election by the taxpayer to request appraisement and assessment at some prior time. Pickering Estate, supra, which established the deductibility of the Federal estate tax, has made postponement of the tax the invariable rule in large estates. Unless the Commonwealth misled the taxpayer by its original appraisement, there is no justification for relieving a knowledgeable taxpayer from paying a tax on the remainder, which he has designedly reduced by timely payment of the Federal estate tax. A careful appraisement will *expressly defer* or *reserve* appraisement of the future interest. Absence of such reservation, however, does not automatically stamp the appraisement as final where it obviously does not include the future interest even though the inventory discloses the entire estate.

In the Estate of James M. McCahan, 63 D. & C. 2d 29, Administrative Judge Klein of this court was presented with an issue similar to the present in which it was necessary for the Commonwealth to reappraise successive life estates. Judge Klein said, at page 8:

"The thrust of appellant's argument in the present case is that by reason of the Commonwealth's failure to specifically reserve the right to appraise the remainder interests when the previous appraisements were filed, it is conclusively precluded from now taxing the remainder interests. We do not think there is any particular magic in the words 'reserve' or 'reservation.' They are not sanctified as cabalistic 'abracadabra,' nor have they been mandated in any manner by the

Legislature. In our opinion, it is far more significant in these cases to determine whether under all of the attendant circumstances we can reasonably conclude that the Commonwealth intended the appraisement to be final and conclusive."

In the present case, the taxpayer would have us ignore the successive appraisements made by the Commonwealth, three of which were stamped as not being final and one, the remainder tax on the $25,000 trust for Charles Hay, was reassessed and paid on October 14, 1927, more than 10 years after the tax had been paid on the life estate alone. The eight intervening reappraisements spanning the years 1916 to 1966, each of which was duly acknowledged by the trustee's payment of the tax assessed, establishes recognition, an indisputable avowal, by the trustee that none of these appraisements purported to be final.

We have no difficulty in distinguishing Altemus Estate, supra, where the hearing judge, in effect, found that the failure of the appraiser to appraise the life estate and remainder, both of which were intended for direct heirs, purported to be a final appraisement inasmuch as the inventory reported the entire estate. The absence of a reservation amounted to an error of judgment which the Commonwealth should have corrected by following the statutory appeal procedure. Here, the trustee does not claim that it was misled at any time by failure of the Commonwealth to assess the tax on the remainder prior to the death of Mary Simms, the last surviving life tenant.

For the reasons set forth above, together with the reasons stated in the appeal of Fox Estate, 62 D. & C. 2d 514, which opinion we are handing down this same day, the exceptions of the Commonwealth are sustained and the collateral remainder tax is now due and collectible.